IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | 02 CR 200-22 |
| v. | ) | |
| | ) | Judge Rebecca Pallmeyer |
| ANDRE LAWRENCE | ) | |

**REPLY IN SUPPORT OF MOTION FOR REDUCED SENTENCE
UNDERSECTION 404 OF THE FIRST STEP ACT**

The defendant, ANDRE LAWRENCE, has moved for a reduction in sentence pursuant to Section 404 of the First Step Act of 2018. Mr. Lawrence explained in his motion that he qualifies for relief under the plain language of Section 404 because his offense of conviction is a "covered offense" as defined by that statute. Dkt. 1862 at 6 ("Motion"). The government argues in response that Mr. Lawrence is ineligible for relief because, in its view, the statutory range has not changed. The government essentially argues that in determining Mr. Lawrence' eligibility for a sentence reduction under Section 404 of the First Step Act, the Court should not consider Mr. Lawrence' offense of conviction, but the drug amount found by the Court at sentencing. *See* Dkt. 1867 at 6 ("Response"). This argument is without merit, and has consistently been rejected by district courts around the country.

For the reasons explained in Mr. Lawrence' motion for reduction in sentence and below, this Court should follow their lead. The plain language of Section 404 makes clear Congress's intent: to permit relief for all defendants convicted of federal drug offenses for which the Fair Sentencing Act reduced the statutory penalties. As a result, Mr. Lawrence is eligible for a reduced sentence.

1

**I.     Mr. Lawrence is Eligible for Relief Under Section 404 of the First Step Act.**

In 2002, Mr. Lawrence was charged by indictment with conspiracy to distribute and possess with intent to distribute an amount in excess of 50 grams of crack cocaine, in violation of 21 U.S.C. § 846; 8419a)(1) and 860(a) (Count One), and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Thirty-Nine). Dkt. No. 172. The government then timely filed a §851 notice that increased Mr. Lawrence's statutory penalties. Mr. Lawrence went to trial and was found guilty of the charges. The Probation Officer "held" Mr. Lawrence "accountable" for at least 1.5 kilograms of cocaine base. PSR at 5:128. Judge Andersen adopted the PSR's quantity finding and sentenced Mr. Lawrence to a below-Guideline sentence of 300 months, with an additional 60 months' consecutive for the firearm, which comported with the pre-FSA statutory penalty of twenty years to life imprisonment. Dkt. No. 936. After re-sentencing based on an error in the criminal history calculation, Judge Andersen sentenced Mr. Lawrence to a below-Guideline sentence of 252 months, with an additional 60 months' consecutive for the firearm, which also comported with the pre-FSA statutory penalty of twenty years to life imprisonment. Dkt. No. 1473.

Section 404 of the First Step Act of 2018 defines a "covered offense" to mean "a violation of a Federal criminal statute, the statutory penalties for which were modified" by section 2 or 3 of the Fair Sentencing Act, Pub. L. 115-391, Title IV, § 404(a), and provides that "a court that imposed a sentence for a covered offense may," upon motion, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act [] were in effect at the time the covered offense was committed." *Id.*, § 404(b).

Had the Court applied section 2 of the Fair Sentencing Act to Mr. Lawrence, his statutory penalty range would be five to forty years. See 21 U.S.C. § 841(b)(1)(B). The § 851 notice would have increased that statutory penalty range to ten years to life. Under the First Step Act, the statutory penalties are therefore altered. According to the government, however, the Court should determine Mr. Lawrence's statutory penalty range under the Fair Sentencing Act based on the uncharged quantity alleged in the PSR and adopted by the judge at sentencing. Government's Response at 6. Thus, the government contends, Mr. Lawrence's statutory range would remain twenty years to life under 21 U.S.C. § 841(b)(1)(A).

The government is wrong.

The government's logic is inconsistent with the plain language of Section 404. The statute refers to the defendant's "offense," and asks whether it is one for which "statutory penalties" were modified, not to "relevant conduct." § 404(a). An "offense" is a specific term applicable to a concept with specific legal consequences that are distinct from the legal consequences attendant to "relevant conduct." It is a well-settled principle of statutory construction that "[w]hen Congress enacts a statute using a phrase that has a settled judicial interpretation, it is presumed to be aware of the prior interpretation." *In re Ford,* 574 F.3d 1279, 1283 (10th Cir. 2009) (citing *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993)). Among other differences between the defendant's "offense" and his "relevant conduct," "relevant conduct" is not subject to "statutory penalties" as referenced in the First Step Act. Relevant conduct is a consideration in sentencing under the United States Sentencing Guidelines. *See* USSG § 1B1.3. Relevant conduct does not affect and cannot increase the statutory maximum attached to a defendant's offense. That is well settled. *See Talbott v. Indiana*, 226 F.3d 866, 869 (7th

3

Cir. 2000); *United States v. Harris*, 244 F.3d 828, 830 (11th Cir. 2001) (collecting cases).

Moreover, the government's reading of the First Step Act would violate the constitutional rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense," and "must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 483 n.10, 490.

The Court clarified that principle in *Alleyne v. United States*, 570 U.S. 99 (2013). The *Alleyne* Court reiterated that a "fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed," *id*. at 107-08, and held that "because the legally prescribed range *is* the penalty affixed to the crime [], it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense." *Id*. at 112 (emphasis in original). The Court concluded that any fact that "aggravates the legally prescribed range of allowable sentences . . . constitutes an element of a separate, aggravated offense that . . . must, therefore, be submitted to the jury and found beyond a reasonable doubt." *Id*. at 115-16.

Finally, in *Burrage v. United States*, 571 U.S. 204 (2014), the Court applied these holdings to a fact, like drug quantity, that increased the penalty range under the statute of which Mr. Burrage was convicted:

> Because the "death results" enhancement increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt. . . . . Thus, the crime charged in count 2 of [the] superseding indictment has two principal elements: (i) knowing or intentional distribution of heroin, § 841(a)(1), and (ii) death caused by ("resulting from") the use of that drug, § 841(b)(1)(C). . . . Violation of § 841(a)(1) is thus a lesser included offense of

4

>the crime charged in count 2. [fn3] It is undisputed that Burrage is guilty of that lesser included offense.

*Id.* at 210 & n.3.

Likewise, Mr. Lawrence was found guilty only of a violation of 21 U.S.C. § 841(a)(1). That offense is a lesser included offense of a violation of 21 U.S.C. § 841(b)(1)(A) or (B). The government's proposed drug quantity constitutes an element of a separate, aggravated crime of which he was not convicted. Under *Apprendi*, *Alleyne*, and *Burrage*, Mr. Lawrence's statutory range cannot be increased based on an uncharged judge-found drug quantity.

The government contends, however, that the rules announced in *Apprendi* and its progeny "do[] not apply" because the decision in *Alleyne* was "not decided until nearly three years after the defendant was sentence [sic] in this case and does not apply retroactively to him." Gov. Resp. at 6. But that is incorrect. The courts' former practice of using uncharged judge-found facts to determine statutory ranges was always unconstitutional. It did not just become unconstitutional when *Apprendi* and *Alleyne* were announced. As the Supreme Court has explained:

>"Retroactivity" suggests that when we declare that a new constitutional rule of criminal procedure is "nonretroactive," we are implying that the right at issue was not in existence prior to the date the "new rule" was announced. But *this is incorrect*. As we have already explained, *the source of a "new rule" is the Constitution itself*, not any judicial power to create new rules of law. Accordingly, *the underlying right necessarily pre-exists our articulation of the new rule*. What we are actually determining when we assess the "retroactivity" of a new rule is not the temporal scope of a newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought.

*Danforth v. Minnesota*, 552 U.S. 264, 271 (2008) (emphases added).

5

The government supports its argument that *Apprendi* and its progeny "should not apply" with a citation to *Crayton v. United States*, 799 F.3d 623, 624 (7th Cir 2015). Gov. Resp. at 6. In *Crayton*, the Seventh Circuit held that *Alleyne* was not retroactive on collateral review. *Id.* at 624.

But Mr. Lawrence is not seeking relief on collateral review. He is seeking relief under Section 404 of the First Step Act, a new statutory remedy that Congress expressly made retroactive. *See* Sec. 404(b) (court may impose a reduced sentence "as if" the Fair Sentencing Act "were in effect at the time the covered offense was committed"). While courts have held that *Alleyne*, *Apprendi* and *Burrage* are not retroactive "on collateral review" because they are procedural rather than substantive within the meaning of *Teague v. Lane*, that distinction has no bearing on the "relief sought" under Section 404. *Danforth*, 552 U.S. at 271. Instead, *Apprendi* and *Alleyne* apply because "the source of [those rules] is the Constitution itself," and "the underlying right necessarily pre-exist[ed] [the Supreme Court's] articulation of the new rule." *Id.*

District courts around the country have considered the government's argument and rejected it. *See, e.g., United States v. Powell,* 360 F. Supp. 3d 134 (N.D.N.Y. 2019) (finding that "[t]he drug type and quantity used to set the statutory range under the First Step Act of 2018 is the quantity charged in the indictment and found by a jury beyond a reasonable doubt" and rejecting the government's argument that the relevant quantity was a greater number the Second Circuit later indicated "there was evidence to support"); *United States v. Simons*, No. 07-CR-00874, 2019 WL 1760840, at *6 (E.D.N.Y. Apr. 22, 2019) ("Any argument that Simons is ineligible for relief on the basis that his actual conduct involved distribution of '280 grams or more of cocaine base,' triggering the § 841(b)(1)(A) penalties and a 10-year minimum term of imprisonment, is unsound. Statutory penalties are

determined by facts submitted to a grand jury, a trial jury, or established by a guilty plea. Findings by a judge, pursuant to a *Fatico* hearing, may be used to determine a sentence within the statutory penalties, but do not establish statutory penalties and cannot change the mandatory minimum sentence now applicable."); *United States Of America v. Jerrod Martin*, 03-cr-795 (BMC), 2019 WL 1558817 (E.D.N.Y Apr. 10, 2019) (rejecting the government's argument that the stipulated drug weight of 1.5 kilograms should govern instead of the statute of conviction); *United States v. Davis*, No. 07-CR-245S, 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019) (rejecting the government's argument to use drug amount established by relevant conduct); *U.S. v. Allen*, No. 8:00-cr-378-T-26AAS (M.D. Fla. Feb. 19, 2019) (rejecting the government's argument that defendant was not eligible under the First Step Act because the admitted drug quantity was greater than 280 grams); *United States v. Davis*, No. 4:92-cr-04013-WS-CAS (N.D. Fla. Mar. 6, 2019), ECF No. 2245 (rejecting the government's argument to use amount established by relevant conduct); *United States v. Vance*, No. 0:08-cr-60071-WPD (S.D. Fla. Feb. 27, 2019), ECF No. 71 (using the drug weight charged in the indictment of 5 grams or more rather than the drug weight found in the PSR (28.4 grams) to determine the defendant's eligibility under section 404 of the First Step Act); *United States v. Laguerre,* No. 5:02cr30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (defendant charged with conspiracy to distribute 50 grams or more of crack and sentenced based on 1.5 kilograms of crack held eligible for relief); *United States v. Newton,* 5:02cr30020, 2019 WL 1007100, at *4 (W.D. Va. Mar. 1, 2019) (defendant charged with offense involving 50 grams or more or crack but sentenced based on 596 grams of crack held eligible for relief); *United States v. Logan,* No. 07-20090-01-KHV, 2019 WL 498519 (D. Kan. Feb. 8, 2019) (defendant who pleaded guilty to conspiracy involving 50 grams or more of crack and sentenced based on

7

1.36 kilograms of crack held eligible for relief); Memorandum Opinion and Order, *United States v. Fleurival,* No. 5:06-cr-00041-004 (W.D. Va. Feb. 6, 2019), Dkt No. 1181 at 4 ("[T]he statutory range is based on the quantity of cocaine base charged in the indictment . . ."); *United States v. Tucker*, 356 F. Supp. 3d 808 (S.D. Iowa 2019); Order, *United States v. Lovely*, No. 2:06-cr-00062 (D. Me. Apr. 17, 2019), ECF No. 226. Courts have also considered similar arguments in Section 3582 motions and rejected them. *See United States v. Whitmore*, 573 F. App'x 24, 25 (2d Cir. 2014); *U.S. v. Hogg*, 723 F.3d 730, 741–42 (6th Cir. 2013).

Finally, implicit in the government's response is the assumption that, had the threshold amount to trigger a 20-to-life statutory penalty been 280 grams of crack, they would have charged that amount. The government may well have done so, but they may well have not. All we know is that a grand jury returned an indictment finding probable cause to believe that Mr. Lawrence distributed in excess of 50 grams of crack. Would a grand jury have returned an indictment charging in excess of 280 grams of crack? The answer is purely speculative. What's more, "Congress did not direct district courts to consider, and this court [should] decline[] to consider, what the government might have charged had the Fair Sentencing Act been in effect when Davis's offense was committed." Order Granting Defendant's Motion for Reduction in Sentence, *United States v. Davis*, No. 92-cr-4013 (N.D. Fl. Mar. 6, 2019) Dkt No. 2245 at 10 (emphasis in original); *see also United States v. Pierre*, ___ F. Supp. 3d ___, No. CR 07-003 WES, 2019 WL 1495123, (D.R.I. Apr. 5, 2019) (holding that "in determining whether a defendant is eligible for relief under § 404 of the First Step Act, the sentencing court … should refrain from delving into the particulars of the record to determine how this specific defendant committed his or her offense of conviction, and how those facts would have hypothetically affected the

8

charges brought against the defendant under the new statutory regime").

## II. Mr. Lawrence's Guideline Range Has Been Reduced and He Merits a Sentence Reduction.

At sentencing, Judge Andersen found that Mr. Lawrence was responsible for at least 1.5 kilograms of crack. This is the relevant drug quantity that the Court should use to determine the proper, present-day guidelines for Mr. Lawrence. The government argues that the Court should use different quantities to determine the base offense level—either 4.5 kilograms or 8.4 kilograms. But neither alternative number has a basis in the record.

### A. There is No Basis in the Record to Support a Relevant Conduct Finding of 8.4 Kilograms.

Judge Andersen never made any finding on the record that Mr. Lawrence was responsible for 8.4 kilograms of crack. Although this Court initially rejected Mr. Lawrence's Amendment 750 motion in 2012 on the basis that it was "reasonably foreseeable" to Mr. Lawrence that 8.4 kilograms of crack were involved in the offense, the Court subsequently reversed course and rejected the 8.4-kilogram figure in its ruling on Mr. Lawrence's 2015 Amendment 786 motion. *See* Motion, at 4-5; Dkt. #1791.[1] The Court should continue to disregard the 8.4-kilogram number as without sufficient support in the record. Dkt. 1791.

### B. There is Insufficient Evidence in the Record to Support a Relevant Conduct Finding of 4.5 Kilograms.

The basis of the 4.5-kilogram number in the record is unclear. The earliest

---

[1] Had the Court agreed with the 8.4-kilogram number for the purposes of the Amendment 786 motion, Mr. Lawrence's base offense level would have been 36. When coupled with the two-point enhancement for school zone, this would have yielded a guideline range of 292-365 months. The Court's sentence of 240 months indicates that the Court found that the record did not support the 8.4-kilogram number, but rather a lesser amount, because pursuant to USSG § 1B1.10(b)(2)(A), courts are generally precluded from authorizing a sentence reduction below the low end of the newly-applicable range.

9

suggestion of that quantity is a line in the Seventh Circuit's opinion denying Mr. Lawrence's appeal of the district court's rejection of his Section 3582 motion based on Amendment 706. In that opinion, the Seventh Circuit stated that Judge Andersen had denied Mr. Lawrence's motion "on the ground that he was responsible for well in excess of 4.5 kilograms of crack cocaine." *See United States v. Lawrence*, 09-1431 (7th Cir. April 21, 2009). Judge Andersen's order denying the motion, however, stated no such reasoning, and made no such findings regarding drug quantity. In fact, the order denying the motion gave no reason for the denial at all. *See* Dkt. 1340. Nor was there any court appearance where Judge Andersen put the reason for his denial of the motion on the record; Judge Andersen ruled by mail. *See* Dkt. 1284. The Seventh Circuit's opinion did not contain any citation noting where the district court's reasoning was documented, or how it had come to the conclusion that this was the reason for the denial. *See* Dkt. 1395. It appears that the Seventh Circuit merely assumed that that Judge Andersen adopted the reasoning laid out in the government's response to the Section 3582 motion, which is the only place where the 4.5-kilogram number is documented. Dkt. 1298. In that response, the government acknowledged that the Court utilized the 1.5-kilogram number but argued that "there was overwhelming evidence presented at trial and sentencing that the amount of crack cocaine reasonably foreseeable to defendant was 4.5 kilograms or more." *Id*. at 11. The government advanced numerous alternative arguments in its response. It is unclear why the Seventh Circuit assumed the rationale that Judge Andersen applied in denying the motion when multiple bases for denial were advanced, and no reasoning given.

The government cites the Statement of Reasons attached to the Amended Judgment and Commitment Order from the 2010 resentencing as the basis for the 4.5-kilogram

finding. Response at 4. The SOR does indeed give the offense level as 40, which would correspond with a drug weight of 4.5 kilograms under the 2010 guidelines. But the SOR also indicates that the PSR was adopted "without change," which indicates that the findings of the 2005 PSR were the basis for the resentencing. SOR at 1. Counsel has conferred with the Probation Office, which indicated that no updated or supplemental PSR was filed or submitted in this case. There is no indication that the Probation Office calculated an updated drug quantity after the 2005 sentencing. Indeed, in the government's re-sentencing memorandum, the government stated: "The government agrees with the *original* calculation by Probation and by this Court that the offense level applicable to defendant is 40. This remains the case, even with the change in the Guidelines for crack that occurred after defendant's original sentencing." Dkt. #1464 at 8 (emphasis added). The government's memorandum did not advance an argument that the Court should find Mr. Lawrence responsible for a greater quantity than was determined at the original sentencing. The defense's two-page submission made no mention of a change in quantity, but assumed the same base offense level of 40. *See* Dkt. 1466. It is therefore unclear from the record whether the Court used the 2005 guidelines in determining the new sentence, or whether the Court made new, specific findings as to quantity and revised its original finding of 1.5 kilograms.

The transcript of Mr. Lawrence's re-sentencing does allude to the 4.5 kilogram number as the basis for denying the Section 3582 motion based on Amendment 706. *See* Dkt. #1872, Tr. at 9:15-18. But, as discussed in Mr. Lawrence's Reply Brief in Support of his § 3582 motion based on Amendment 782, this new purported finding regarding relevant conduct is inconsistent with *Dillon v. United States*, 560 U.S. 817 (2010), and *United States v. Davison*, 761 F.3d 683 (7th Cir. 2014). *See* Dkt. 1788 at 3-10.

11

Under Seventh Circuit precedent, the recalculation of relevant conduct in 3582(c) proceedings is permissible only if the new finding is not inconsistent with the original finding, is specific, and is supported by the record. *United States v. Woods*, 581 F.3d 531, 538-39 (7th Cir. 2009); *accord, United States v. Davis*, 682 F.3d 596 (7th Cir. 2012).

In *Davison*, the Seventh Circuit held that a specific defendant's liability for drug sales by other members of the conspiracy "depends not only on whether the sale quantity was foreseeable to him . . . but also on whether he joined with those other conspirators in a joint undertaking of which the making of those sales was an objective . . . ." *Davison*, 761 F.3d at 685-86. In explaining this two-step inquiry, the Court made explicit that relying on "foreseeability" of the sales of other conspirators is not enough, and to do so confounds mere foreseeability with the specific findings required under Guideline § 1B1.3 and its application notes. *Id*.

Instead, the *Davison* Court emphasized the district court's need to make individualized, specific determinations in order to comply with Guideline § 1B1.3. See U.S.S.G. § 1B1.3, cmt. n. 2 (The scope of relevant conduct is "not necessarily the same as the scope of the entire conspiracy."); *United States v. Edwards*, 115 F.3d 1322, 1327 (7th Cir.1997) ("[I]n order to be held accountable for the conduct of others, that conduct must have been both in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity.); *United States v. Soto-Piedra*, 525 F.3d 527, 532 (7th Cir. 2008) ("Foreseeability is a limitation on liability for conduct of others in furtherance of a jointly undertaken activity . . . .").

Judge Andersen's comments at the re-sentencing are not the specific, individualized findings required by *Davison*. There, Judge Andersen merely stated that, in reviewing the previous § 3582 motion, "I felt there was no doubt that the amount of

12

drugs used in the overall conspiracy was more than 4 ½ kilograms." Dkt. #1872, Tr. 9:15-17. The judge's comments, on their face, speak to the *overall* conspiracy and make no mention of any amount specifically attributable or foreseeable to Mr. Lawrence, or any findings about whether Mr. Lawrence joined with other conspirators in a joint undertaking with the objective of making those sales. Without those findings in the record, Judge Andersen's recalculation of the relevant conduct applicable to Mr. Lawrence's case were improper. For this reason, the Court should discard the 4.5 kilogram number as without sufficient basis in the record.

### C. The Court Should Apply the 1.5 Kilogram Finding by Judge Andersen and Reduce Mr. Lawrence's Sentence Accordingly.

If the Court applies the 1.5 kilogram number determined by Judge Andersen at the original sentencing, Mr. Lawrence's final offense level would be 34. His guideline range would be 151-188 months, plus the 60 months consecutive on the gun count. At the original sentencing, Judge Andersen sentenced Mr. Lawrence to sixty months *below* the low end of the guideline range, specifically noting his relatively minor role in the conspiracy. Tr. at 63. Even if the Court determined *no* departure was appropriate today and applied the low end of the new guidelines for a 211-month total sentence, Mr. Lawrence will have overserved his sentence.[2]

Even if the Court were to apply the 4.5-kilogram number that the government

---

[2] As of the date of this filing, Mr. Lawrence has served roughly 204 months (or 17 years) since being taken into custody on April 9, 2002. Mr. Lawrence's initial Motion erroneously listed the relevant date as July 19, 2002, but the BOP sentence computation sheet shows that Mr. Lawrence's credit began on April 9, 2002, with an additional four days prior credit. With the addition of the good time credit governed by the pre-First Step Act policy, Mr. Lawrence has served the equivalent of a 233-month sentence. With the addition of the *new* good time calculation, Mr. Lawrence will have served roughly the equivalent of a 240-month sentence. Counsel will deliver a copy of the BOP sentence computation sheet to chambers and the government under separate cover.

13

asserts is the proper drug quantity, Mr. Lawrence's guideline range would fall and he would be entitled to a reduced sentence. The present-day base offense level for 4.5 kilograms of crack cocaine is 34. With the addition of two levels for the school-zone enhancement, Mr. Lawrence's adjusted offense level would be 36, and his resulting guideline range would be 188-235 months.

If the Court were to make a departure commensurate with the one Judge Andersen applied, Mr. Lawrence's sentence would be 128 months, plus the consecutive 60 month sentence for the gun, yielding a total sentence of 188 months. With the addition of good time credit, Mr. Lawrence has over-served this sentence. Even if the Court were to adopt a much smaller departure of only 15 months below the new guidelines, Mr. Lawrence will still have overserved that sentence at this point. Finally, if the Court were to grant no departure from the new guidelines at all, and simply sentence Mr. Lawrence at the low end of the new guidelines, he would be entitled to a significant sentence reduction under the First Step Act.

The transcript of Mr. Lawrence's resentencing, however, supports a reduced sentence below the new guidelines. Judge Anderson indicated that he was constrained by the mandatory minimum on the drug count, noting that "I can't go below 20 years." Tr. at 12:23. The judge gave Mr. Lawrence 21 years, just in excess of the mandatory minimum, because he did not "think that the message, for whatever it is worth, in this particular case is that the—that the absolute two minimums should apply." Tr. 13:24-14:1. Judge Andersen explained that he tacked on the additional year above the minimum "to account for the fact that the Guidelines and the law generally apply for acceptance of responsibility and timely plea, which saves a lot of time and expense." Tr. 14:21-24. Given the judge's statements, it is reasonable to assume that had the mandatory minimum been ten years

14

instead of 20, Mr. Lawrence would have received an even lesser sentence. Indeed, Judge Andersen noted that "I personally believe that 21 years is probably more than required to protect the public. Actually I don't think – I don't think at this point in time the public needs any protection from you. I do not want to handicap your life further." Tr. 12:24-13:3.

Further, as noted in Mr. Lawrence's Motion, he has displayed exemplary behavior in his time at BOP, with only a single minor infraction marring his record. While at FMC Rochester, Mr. Lawrence served as an orderly in the hospital, and took a substantial number of classes to further his education. He has already served a very serious and lengthy sentence that promotes respect for the law, and demonstrated that he does not present a future risk of re-offending.

## CONCLUSION

WHEREFORE, based on the foregoing defendant respectfully requests that this Court exercise its power under the First Step Act and impose a sentence of time served on Mr. Lawrence.

Respectfully submitted,
FEDERAL DEFENDER PROGRAM
John Murphy
Executive Director

By: /s/ Amanda G. Penabad
     Amanda G. Penabad

AMANDA G. PENABAD
FEDERAL DEFENDER PROGRAM
55 E. Monroe, Suite 2800
Chicago, IL 60603
(312) 621-8340

## CERTIFICATE OF SERVICE

The undersigned, <u>Amanda G. Penabad</u>, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**REPLY IN SUPPORT OF MOTION FOR REDUCED SENTENCE UNDERSECTION 404 OF THE FIRST STEP ACT**

was served pursuant to the district courts ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>April 24, 2019</u>, to counsel/parties that are non-ECF filers.

                              By: */s/ Amanda G. Penabad*
                                   Amanda G. Penabad
                                   FEDERAL DEFENDER PROGRAM
                                   55 E. Monroe St., Suite 2800
                                   Chicago, Illinois 60603
                                   (312) 621-8340